[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16403
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 5, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00051-CR-T-17-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD DUVALL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 5, 2005)

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Ronald Duvall appeals his conviction and sentence for theft of government

property, in violation of 18 U.S.C. § 641.  Duvall appeals on three grounds, asserting the district court:  (1) erred by denying his motion for judgment of acquittal; (2) erred by submitting sentencing factors to the jury; and (3) sentenced him based on facts not pled in the indictment or proven to a jury beyond a reasonable doubt, thus violating *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and *United States v. Booker*, 125 S. Ct. 738 (2005).  We affirm Duvall's conviction, but vacate his sentence and remand for resentencing.

## I.  DISCUSSION

### A.  *Motion for Judgment of Acquittal*

First, Duvall asserts the district court erred in denying his motion for a judgment of acquittal because he should not have been penalized for relying upon the diagnoses of the doctors which enabled him to received benefits from the Veteran's Administration (VA).  We review

> [q]uestions about the sufficiency of the evidence produced at trial . . . *de novo*. We must view all evidence in the light most favorable to the United States, with all reasonable inferences drawn in its favor.  To uphold the district court's denial of the motion for judgment of acquittal and the jury's verdict, we need only find that a reasonable fact finder could have concluded that the evidence established the defendant's guilt beyond a reasonable doubt.

*United States v. Fallen*, 256 F.3d 1082, 1087 (11th Cir. 2001) (citations omitted).

"It is not necessary that the evidence exclude every reasonable hypothesis of

2

innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among the constructions of the evidence." *United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997), *holding modified on other grounds*, *United States v. Toler*, 144 F.3d 1423 (11th Cir. 1998). "Credibility determinations are the exclusive province of the jury." *Id.* at 1325 (quotation omitted).

> For testimony of a government witness to be incredible as a matter of law, it must be unbelievable on its face. It must be testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature. Further, the fact that [the witness] has consistently lied in the past, engaged in various criminal activities, [and] thought that his testimony would benefit him does not make his testimony incredible.

*Id.* (citations and quotations omitted).

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any . . . thing of value of the United States or of any department or agency thereof . . . Shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 641. The elements of this offense include: (1) the property at issue belongs to the United States, (2) the defendant fraudulently appropriated the property to his own use, and (3) the defendant did so knowingly and willfully with the intent to

3

permanently or temporarily deprive the owner of the property. *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (citations omitted).

The money paid by the VA belonged to the United States. The VA had intended the funds it paid to Duvall to be paid to a blind veteran. Duvall received the money because he maintained he was virtually blind. However, the jury heard evidence of physicians who had recently evaluated Duvall and found no physical reason for his poor vision. Further, there were no suspected conditions or diseases which could account for the nature of his vision loss or its severity. The jury also heard evidence of Duvall performing tasks an ordinary individual with poor vision could not do. These included: reading, writing, measuring, painting, installing drywall, laying tile, playing pool, critiquing a haircut, drawing a picture, building a porch, and even driving speeds up to 82 miles per hour. No witnesses admitted to witnessing Duvall's method of scanning by moving his head to utilize his peripheral vision. Thus, Duvall's retention of the money, despite the fact his actions showed he was not in fact blind constituted criminal conversion. He was not entitled to those funds, regardless of how he came into possession of them. Accordingly, we affirm on this issue.

B. *Sentencing Factors*

Next, Duvall contends the district court erred by allowing sentencing factors, such as the amount of the Government's loss and whether the scheme required more than minimal planning, to be pled in the indictment and submitted to the jury. We review a denial of a motion to dismiss an indictment for abuse of discretion. *United States v. Waldon*, 363 F.3d 1103, 1108 (11th Cir.), *cert. denied*, 125 S. Ct. 208 (2004). A district court's refusal to give a requested instruction is also reviewed for abuse of discretion. *United States v. Futrell*, 209 F.3d 1286, 1288 (11th Cir. 2000).

"Special verdicts in criminal jury trials are generally disfavored." *United States v. Griffin*, 705 F.2d 434, 437 (11th Cir. 1983). However, "special verdicts are appropriate in addressing sentencing matters." *United States v. Clay*, 355 F.3d 1281, 1285 (11th Cir.), *cert. denied*, 125 S. Ct. 626 (2004) (citation omitted). In *Clay*, the district court did not err in employing a special verdict to determine the drug amount and applicability of a mandatory minimum sentence in accordance with *Apprendi v. New Jersey*, 120 S. Ct. 2348 (2000). *Clay*, 355 F.3d at 1285.

Although *Booker* notes the submission of sentencing factors to the jury would be burdensome, 125 S. Ct. at 755–56, it does not prohibit such a measure. As *Blakely* cast doubt on the constitutionality of the Guidelines as applied, and the sentencing allegations required no more proof than that which would already be

5

submitted to the jury at trial, the district court did not abuse its discretion in not dismissing the indictment for its inclusion of the allegations, and instructing the jury on such findings. Accordingly, we affirm on this issue.

C. *Sentencing*

Lastly, Duvall asserts the district court erred in sentencing him to 30 months' imprisonment for the losses proved to the jury, and 37 months' imprisonment for the losses found at the sentencing hearing. Because Duvall raised his *Booker* objection to the district court's application of the Sentencing Guidelines at his sentencing, we review the issue de novo, and reverse "only if any error was harmful." *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005). We have clarified there are two types of error under *Booker*: (1) constitutional error based upon sentencing enhancements imposed under a mandatory Guidelines system neither admitted by the defendant nor submitted to a jury and proven beyond a reasonable doubt; and (2) statutory error based upon sentencing under a mandatory Guidelines system. *United States v. Shelton*, 400 F.3d 1325, 1329–30 (11th Cir. 2005). In order to find a constitutional error harmless, we must find beyond a reasonable doubt the error complained of did not contribute to the sentence obtained. *Paz*, 405 F.3d at 948.

Duvall was sentenced post-*Blakely*, but pre-*Booker*. The district judge sentenced Duvall to both a "*Blakely*" sentence and a "Guidelines" sentence. The *Blakely* sentence was based solely on the jury's verdict. At trial, the jury found beyond a reasonable doubt that Duvall was responsible for at least $200,000 in losses and the crime involved more than minimal planning. The base offense level for a violation of 18 U.S.C. § 641 is 4. U.S.S.G. § 2B1.1.[1] The district court may increase the base offense level by 10 if the amount taken from the government is greater than $200,000. *Id.* § 2B1.1(b)(1)(K). The district court may also increase the base offense level by two on a finding the crime involved more than minimal planning. *Id.* § 2B1.1(b)(4)(A). Based on Duvall's criminal history category of II, Duvall's total base offense level based solely on the jury's verdict was 16, with a sentencing range of 24 to 30 months' imprisonment. Thus, the district judge sentenced Duvall to 30 months' imprisonment using this calculation.

The PSI, however, stated Duvall was responsible for at $500,000 in losses. The district court may increase the base offense level by 12 if the amount taken from the government is greater than $500,000. *Id.* § 2B1.1(b)(1)(M). The district judge found, by a preponderance of the evidence, that Duvall was responsible for at least $500,000 in losses. Thus, under his "Guidelines" sentence, Duvall's total

---

[1] Duvall's offense level was calculated under the November 2000 edition of the Sentencing Guidelines. All citations to the Guidelines are to the November 2000 edition.

7

base offense level was 18. With a criminal history category of II, Duvall's sentencing range was 30 to 37 months' imprisonment under the Guidelines. The district judge imposed an alternative sentence of 37 months' imprisonment using this calculation.

Duvall's 30-month sentence was enhanced as a result of facts that were proven beyond a reasonable doubt to a jury, thus, no constitutional error under *Booker* is present. However, because Duvall's 37-month sentence was enhanced as a result of facts that were not proven beyond a reasonable doubt to a jury under a mandatory Guidelines system, constitutional error under *Booker* occurred. *See Rodriguez*, 398 F.3d at 1298. As constitutional error is present in the 37-month sentence, the burden shifts to the Government to show, beyond a reasonable doubt, the error did not contribute to the sentence received. The Government argues there is no error with respect to the 37-month sentence, thus it has not met its burden of showing the error was harmless. Further, the Government concedes remand is necessary as the judgment contains two different sentences and creates a likelihood of confusion at the Bureau of Prisons. Accordingly, we vacate Duvall's sentence and remand for resentencing.

## II. CONCLUSION

The district court did not err in denying Duvall's motion for judgment of acquittal or abuse its discretion by submitting sentencing factors to the jury. The Government did not meet its burden, however, of showing the constitutional error in Duvall's sentence was harmless beyond a reasonable doubt. Thus, we affirm Duvall's conviction, but vacate his sentence and remand for resentencing light of *Booker*. We note the district court correctly calculated Duvall's Guidelines range of 30 to 37 months' imprisonment. *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir. 2005) (stating after *Booker*, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate *correctly* the sentencing range prescribed by the Guidelines"). Thus, on remand the district court is required to sentence Duvall according to *Booker*, considering the Guidelines advisory range of 30 to 37 months' imprisonment, and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp. 2004)." *Booker*, 125 S. Ct. at 757.[2]

CONVICTION AFFIRMED, SENTENCE VACATED AND REMANDED.

---

[2] We do not mean to suggest by our holding that the district court must impose any particular sentence on remand. Rather, we merely hold the Government did not meet its burden of showing the constitutional error under *Booker* was harmless. We also do not attempt to decide now whether a particular sentence might be reasonable in this case.